## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRYSTAL SEMEROD, | No. 4:24-CV-1165 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CHIEF RAYMOND SIKO, *et al.*, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 2, 2024

## I.      BACKGROUND

In June 2024, Plaintiff, Krystal Semerod ("Semerod"), filed a three-count complaint against Defendants, Chief Raymond Siko ("Siko"), Patrolman Benjamin Busko ("Busko"), Corporal Tyler Bischof ("Bischof") (collectively the "Individual Defendants"), and the City of Shamokin ("Shamokin") in the Court of Common Pleas of Northumberland County.[1] Defendants removed the case to this Court in July 2024.[2]

On July 22, 2024, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The motion is now ripe

---

[1]   Doc. 1-1.
[2]   Doc. 1.
[3]   Doc. 3.

for disposition; for the reasons that follow, it is granted without prejudice. Semerod will be provided leave to amend the complaint to correct and replead her claims.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

---

[4]   550 U.S. 544 (2007).
[5]   556 U.S. 662 (2009).
[6]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## B.    Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Semerod's daughter tragically died of a brain hemorrhage and other injuries on September 19, 2023.[8] Later that day, Busko and Bischof arrested Semerod on charges that she caused her daughter's death.[9] At the time of arrest, the Shamokin Police had a warrant to seize Semerod's cell phone, but the seizure was not effectuated until Semerod was incarcerated.[10] On February 6, 2024, the Northumberland County District Attorney dismissed the charges against Semerod and she was released from jail.[11] She subsequently requested that Siko return her cell phone.[12] Siko refused, and has not returned the phone to this day.[13]

## C.    Analysis

Semerod asserts that her cell phone is being illegally held by Shamokin and the Individual Defendants in violation of the Fourth and Fifth Amendments of the United States Constitution. Her claims are accordingly brought pursuant to 42 U.S.C. § 1983. The Court begins with the central focus of the parties' briefs: Semerod's claims against Shamokin. The Court will then address Semerod's

---

[8]   Doc. 1-1 ¶¶ 10-11.
[9]   *Id.* ¶¶ 12-13.
[10]   *Id.* ¶¶ 14-15.
[11]   *Id.* ¶ 16.
[12]   *Id.* ¶¶ 17-18.
[13]   *Id.* ¶¶ 19-20.

claims against the Individual Defendants. Finally, the Court will consider whether amendment would be futile.

### 1.      Municipal Liability

Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law.[14] So to plead a Section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[15] Defendants argue that Semerod has failed to satisfy either element.

First (although only coherently raised in their reply brief), Defendants contend that Semerod has not alleged a violation of her constitutional rights. Semerod brings claims pursuant to the Fourth and Fifth Amendments, alleging that the police seized her phone and held it indefinitely.[16] Defendants argue that Semerod has not plausibly alleged a Fourth Amendment violation, and that the Fifth Amendment does not apply to them because it only restricts action by the Federal Government.

The Court agrees that Semerod has not pled a Fourth Amendment violation. The Fourth Amendment protects individuals against unreasonable searches and

---

[14] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).
[15] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[16] *See* Doc. 1-1.

seizures.[17] A seizure pursuant to a valid warrant is generally not "unreasonable."[18] However, because a valid warrant relies "upon allegation of presently existing facts" to support probable cause, a warrant can become "stale" if police do not execute it promptly.[19] Semerod's only "seizure" allegation states that her phone was seized pursuant to a warrant, the validity of which she does not contest.[20] She implies that the seizure's timing may have been problematic, noting that her phone was seized when she was incarcerated rather than when she was arrested.[21] But her complaint contains no detail about the amount of time that passed between her arrest and incarceration, and the Count cannot reasonably infer that whatever time did pass undermined probable cause.[22] Accordingly, Semerod has not pled a Fourth Amendment violation.

However, Defendants are incorrect that the Fifth Amendment does not apply to them. Although the Fifth Amendment's Due Process clause only restricts the Federal Government,[23] the Takings Clause—the provision at issue here—is

---

[17] U.S. Const. amend. IV.

[18] *See United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023); *United States v. Johnson*, 43 F.4th 1100, 1110 (10th Cir. 2022).

[19] *United States v. Bedford*, 519 F.2d 650, 655-56 (3d Cir. 1975).

[20] Doc. 1-1 ¶ 14.

[21] *Id.* ¶ 15.

[22] *See Bedford*, 579 F.2d at 655-56.

[23] *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)).

enforceable against the States through the Fourteenth Amendment.[24] Indeed, not only is it applicable, the Fifth Amendment's Takings Clause (as opposed to the Fourth Amendment) is the proper provision for a plaintiff to challenge a local government's wrongful "retention of personal property after a lawful initial seizure."[25] So Semerod's allegations that Defendants improperly retained her phone are sufficient for her Fifth Amendment claim to proceed.

Second, Semerod must show that "the constitutional deprivation was caused by a person acting under state law."[26] As set out in *Monell v. New York Department of Social Services*, a municipal body is a "person" who can be liable under Section 1983.[27] But a municipality can only be liable for its own actions; it cannot be vicariously liable for the actions of its employees.[28] A municipal body acts through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[29] This includes unconstitutional practices which are "so permanent and well settled as to constitute a custom or

---

[24]   *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (citing *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)); *see Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713 (2010).

[25]   *Kelly v. Bell*, No. 22-CV-1940, 2023 WL 3161643, at *3-4 (M.D. Pa. Apr. 28, 2023) (quoting *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017), *superseded on other grounds as stated in Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 9-10 (1st Cir. 2022)); *see Frein v. Pa. State Police*, 47 F.4th 247, 251-53 (3d Cir. 2022).

[26]   *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

[27]   436 U.S. 658, 690 (1978).

[28]   *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 463 U.S. at 691).

[29]   *Monell*, 463 U.S. at 690.

usage with the force of law,"[30] as well as acts by the municipal body itself,[31] and a failure to train demonstrating "deliberate indifference" towards the constitutional violations caused by its employees.[32]

Semerod appears to adopt two possible theories of *Monell* liability. First, she alleges that Shamokin does not have "any policy or procedure" regarding the return of seized property.[33] This, she contends, equates to a policy of "leaving the decision as to when to return an owner's property after charges have been dismissed within the sole discretion of a police officer."[34] Second, she suggests that Shamokin "does not adequately train its police officers in regard to the obligation to return property as soon as possible after a search warrant has been executed."[35] Semerod argues that the need for such training is "obvious" because of the frequency with which Shamokin Police seize property but does not identify any other violations like hers.[36] Under Third Circuit precedent, Semerod's theories are different ways of saying the same thing: that Shamokin's inaction caused her injury.[37]

---

[30]   *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988).
[31]   *See Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).
[32]   *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).
[33]   Doc. 1-1 at ¶¶ 27-29.
[34]   Doc. 7 at 7-8.
[35]   Doc. 1-1 at ¶ 30.
[36]   Doc. 7 at 8.
[37]   *Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019) (stating that a plaintiff can plead a *Monell* claim by (1) "put[ting] forth that an unconstitutional policy or custom of the municipality led to his or her injuries," or (2) showing that the injuries "were caused by a failure or inadequacy

To recover for that inaction, Semerod must sufficiently allege that Shamokin manifested a "deliberate indifference" to a likelihood that its employees would commit the constitutional violation at issue.[38] Establishing deliberate indifference requires a showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[39]

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference."[40] However, in *City of Canton v. Harris*, the Supreme Court suggested that a pattern of constitutional violations may not be necessary to prove deliberate indifference in cases where "a violation of federal rights may be a highly predictable consequence of a failure to

---

by the municipality that 'reflects a deliberate or conscious choice,'" and explaining that the second method "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities" (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). Other Circuits have reasoned that failure-to-adopt-a-policy *Monell* claims belong in the "policy or custom" branch of liability, but in such cases similarly ask whether the failure to adopt a policy manifested a deliberate indifference to the likelihood of constitutional violations. *See Orozco v. Dart*, 64 F.4th 806, 824-25 (7th Cir. 2023) (explaining that "municipal liability can be premised, as here, on municipal inaction, such as a 'gap in express policies'" when the municipality "had notice that its gap in policy would cause constitutional violations and was deliberately indifferent to that risk." (quoting *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675-76 (7th Cir. 2022)).

[38] *Forrest*, 930 F.3d at 106 (citing *Estate of Roman*, 914 F.3d at 798).

[39] *Id.* at 106 (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). This test is functionally the same as the *City of Canton* inquiry, described below. *See Connick*, 563 U.S. at 63-64.

[40] *Connick*, 563 U.S. at 62 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

equip law enforcement officers with specific tools to handle recurring situations."[41] Nevertheless, in the years following *City of Canton*, the Court has described the possibility of a "single-incident" omission claim as arising only "rare[ly]"[42] and "in a narrow range of circumstances."[43] So Semerod, who has not identified a pattern of violations, faces an uphill battle.

In *City of Canton*, the Supreme Court provided a hypothetical example of single-incident liability: a city's failure to train its police officers "in the constitutional limitations on the use of deadly force."[44] The Court explained that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons . . . [and] has armed its officers with firearms, in part to allow them to accomplish this task."[45] Given those circumstances, the necessity of training is "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."[46]

In at least four cases, the Third Circuit has recognized the possibility of single-incident liability. First, in *Berg v. County of Allegheny* the Third Circuit considered whether Allegheny County could be liable when its warrant issuance

---

[41] *Bryan Cnty.*, 520 U.S. at 409 (discussing *City of Canton v. Harris*, 498 U.S. 378, 388 (1989)).

[42] *Connick*, 563 U.S. at 64.

[43] *Bryan Cnty.*, 520 U.S. at 409; *see Orozco*, 64 F.4th at 825-26 ("A constitutional violation must be a 'blatantly obvious' consequence of inaction for single-incident liability." (quoting *Bohanon*, 46 F.4th at 826)).

[44] *City of Canton*, 489 U.S. at 390 n.10 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

[45] *Id.*

[46] *Id.*

system included no safeguards against issuing a warrant for the wrong person due to a typographical error.[47] The court denied summary judgment on the issue, reasoning that the recurrent nature of warrant issuance and the likelihood of an unconstitutional wrongful arrest in the event of the "simple mistake" at issue was comparable to the *City of Canton* hypothetical and that it therefore "[could not] hold that the municipality was not deliberately indifferent to the risk as a matter of law."[48]

Second, in *Natale v. Camden County Correctional Facility* the Third Circuit found that municipal liability was possible when Daniel Natale, an insulin-dependent diabetic, suffered a stroke following a brief incarceration.[49] The record showed that prison healthcare workers did not administer Natale insulin for twenty-one hours after his arrival at prison despite his efforts to inform healthcare employees of his condition.[50] According to a nurse, the prison's "'policy' was that a doctor would see inmates within 72 hours, but . . . there was no practice in place to accommodate inmates with more immediate medication needs."[51] The Third Circuit reasoned that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with

---

[47]   219 F.3d 261 (3d Cir. 2000).
[48]   *Id.* at 276-77.
[49]   318 F.3d 575, 578 (3d Cir. 2003).
[50]   *Id.*
[51]   *Id.* at 583, 584-85.

serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."[52]

Third, in *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center* the plaintiff argued that the municipality was deliberately indifferent to the risk of resident-on-resident assaults when it did not provide de-escalation training or protocols for protecting at-risk residents.[53] The Third Circuit left that question to the jury, reasoning that

> the evidence supports an inference that the potential for conflict between residents of the Center was high. Taken as a whole, we believe the evidence concerning the Center's failure to train its child-care workers in areas that would reduce the risk of a resident being deprived of his constitutional right to security and well-being was sufficient to prevent the grant of summary judgment.[54]

And, similarly, in *Thomas v. Cumberland County* the Third Circuit held that municipal liability was possible when the plaintiff "put forward evidence that fights regularly occurred in the prison" and the county did not provide de-escalation and intervention training to corrections officers.[55] In both cases, the Third Circuit reasoned that constitutional violations could be a "highly predictable consequence" of the violence that regularly occurred in the institutions.[56]

---

[52] *Id.* at 585.
[53] 372 F.3d 572, 580-83 (3d Cir. 2004).
[54] *Id.* at 583.
[55] 749 F.3d 217, 225 (3d Cir. 2014).
[56] *Thomas*, 749 F.3d at 225; *A.M.*, 372 F.3d at 582-83.

On the other hand, in *Connick v. Thompson* the Supreme Court rejected a single-incident theory.[57] Thompson was convicted of armed robbery and murder after prosecutors failed to disclose potentially exculpatory evidence as required by *Brady v. Maryland*.[58] When the *Brady* violation came to light, Thompson sued the district attorney's office to recover for the deprivation of his liberty, arguing that the district attorney's office was deliberately indifferent to the need for more or different *Brady* training.[59] For support, Thompson primarily argued that "the *Brady* violation in his case was the 'obvious' consequence of failing to provide specific *Brady* training, and that this showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal liability."[60]

The Supreme Court acknowledged "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations" that was established in *City of Canton*.[61] Nevertheless, the Court rejected Thompson's argument, concluding that "[f]ailure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability."[62] The Court distinguished the *City of*

---

[57]   563 U.S. 51 (2011).
[58]   *Id.* at 55; *Brady v. Maryland*, 373 U.S. 83 (1963). The facts of *Connick* are simplified for relevance.
[59]   *Id.* at 56-58.
[60]   *Id.* at 63.
[61]   *Id.* at 63-64 (discussing *City of Canton*, 489 U.S. at 390 n.10).
[62]   *Id.* at 64.

*Canton* hypothetical, explaining that it involved "split-second decisions with life-or-death consequences," that by necessity would sometimes be made by "novice officers" who "in the absence of training" would have "no way . . . to obtain the legal knowledge they require."[63] In contrast, the *Brady* violation at issue was committed by attorneys "trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment."[64] Accordingly, "formal in-house training about how to obey the law" was not necessary to prevent constitutional violations.[65]

Considering this precedent, Semerod has not alleged facts sufficient to establish Shamokin's deliberate indifference to a likelihood of constitutional violations based on a single incident.

First, although return of property requests may be common,[66] Semerod has not shown that that resolving them will involve a "difficult choice" that police are likely to get wrong. Unlike *Berg*, where "simple" typographical mistakes were all but inevitable, and the situations in *Natale*, *A.M.*, *Thomas*, and the Supreme Court's *City of Canton* hypothetical, where municipal employees were faced with highly time-sensitive decisions in often frantic circumstances, there is no reason to

---

[63]   *Id.*
[64]   *Id.* at 64.
[65]   *Id.* at 66-67.
[66]   *See, e.g.*, *Rapeika v. Borough of Fort Lee*, No. 19-CV-6612, 2020 WL 39155, at *1-2 (D.N.J. Jan. 3, 2020) (section 1983 claim for failure to return seized property).

conclude that return-of-property mistakes are probable. Generally, officers should be able to resolve the often-routine requests using the principles they have learned from the basic Fourth and Fifth Amendment educations they receive as part of their training.[67] When a close call does arise, officers will have time to turn to the knowledge of the department's more experienced officers or legal counsel, if necessary.[68]

Second, even if mistakes were likely, the Court is not convinced that they would be likely to result in constitutional violations. Semerod's suggested policies require rapid return of property after a search warrant expires,[69] but she cites no law to suggest that immediate, proactive return is constitutionally required.[70] Instead, Courts have recognized the importance and adequacy (in the Due Process

---

[67] *See Connick*, 563 U.S. at 67 (advising that education on general constitutional limits is often adequate and warning against requiring overly "nuance[d]" training focused on "the specific scenario related to the violation in [the] case" because "in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident" (quoting *City of Canton*, 489 U.S. at 392) (internal alteration and quotation omitted)). Notably, Semerod has not alleged that Shamokin does not provide police with *any* Fourth or Fifth Amendment training. *See Estate of Roman*, 914 F.3d at 799-800 (finding allegations that Newark did not train some officers in over twenty years and "its training did not cover the basics of the Fourth Amendment" sufficient to survive a motion to dismiss).

[68] *Connick*, 563 U.S. at 65.

[69] *See* Doc. 1-1 ¶¶ 29-30 (challenging Shamokin's lack of a "policy or procedure directing that officers return property after the property has been held for forty-eight (48) hours and the search warrant has expired," and lack of training "in regard to the obligation to return property as soon as possible after a search warrant has been executed").

[70] *See Frein*, 47 F.4th at 253 (declining to determine "when, after the criminal case . . . [Fifth Amendment] liability [for property retention] accrues").

context) of the return-of-property procedures provided by law.[71] Both the Federal and Pennsylvania Rules of Criminal Procedure provide that a "person aggrieved by . . . the deprivation of property . . . may move for the property's return" in an appropriate court.[72] Neither code imposes upon police any requirement of proactive return. Of course, in Semerod's case she has been deprived of her property for several months, but, given the unsettled state of her asserted constitutional right,[73] the Court cannot conclude that Shamokin was deliberately indifferent in relying on Pennsylvania's established procedures to protect against constitutional violations.[74]

Accordingly, the Court concludes that Semerod has failed to plead that Shamokin was deliberately indifferent to an "obvious" risk of unconstitutional deprivations of property. Semerod's claims against Shamokin are dismissed.[75]

---

[71]  *See id.* at 250, 253, 256-57 (noting that plaintiffs had pursued return of property in Pennsylvania court and been denied and holding that Pennsylvania return-of-property procedures satisfied Due Process, but declining to decide "whether the plaintiff must first demand return of the property and be refused" to bring a Fifth Amendment takings claim); *cf. City of West Covina v. Perkins*, 525 U.S. 234, 240-44 (1999) (holding that municipality had no Due Process obligation to provide specific notice of return-of-property procedures to plaintiff seeking return of property).

[72]  Fed. R. Crim. P. 41(e); Pa. R. Crim. P. 588.

[73]  *See Frein*, 47 F.4th at 253.

[74]  The Court notes that Semerod has not alleged that she attempted to use the Pennsylvania return-of-property procedure to recover her phone. The implications of this failure are not addressed because neither party raises it.

[75]  As additional support for this conclusion, the court notes that Semerod's own allegations belie Shamokin's responsibility for the alleged constitutional violation. According to Semerod, "the Defendants are keeping Plaintiff's phone simply as a result of maliciousness because they want to inflict emotional harm to the Plaintiff." Doc. 1-1 ¶ 22. As there is no *respondeat superior* liability under section 1983, Shamokin cannot be liable for its employees' vengeful acts.

## 2.    Individual Liability

Semerod asserts a claim against all Defendants for an "unlawful taking of [her] property in violation of the Fifth Amendment of the United States Constitution."[76] In response to Defendants' motion to dismiss, however, Semerod concedes that her claims against the Individual Defendants in their official capacity "are duplicative of claims against [Shamokin]" and therefore should be dismissed.[77] She offers no other argument on the issue. Accordingly, Semerod's claims against the Individual Defendants are dismissed.[78]

Despite the parties' agreement, however, one important issue remains unaddressed. There has long been a distinction between the viability of claims for money damages, on the one hand, and claims for prospective injunctive relief, on the other, in civil rights suits against state and municipal officials.[79] The parties did not note this distinction, so the Court declines to untangle the web of potential

---

[76]  Doc. 1-1 at 6-7.

[77]  Doc. 7 at 8-9 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985)).

[78]  Because of Semerod's concession, the Court does not address Defendants' arguments that Semerod failed to plead personal involvement and that they are entitled to qualified immunity.

[79]  *See Ex Parte Young*, 209 U.S. 123 (1908); *Iles v. de Jongh*, 638 F.3d 169, 177-78 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for 'prospective' injunctive relief, because 'official capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989))); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002); *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) (holding that qualified immunity is not a defense to claims for prospective injunctive relief).

liability itself. Should Semerod amend her complaint, however, both sides should keep this point in mind.

### 3.    Futility of Amendment

Defendants contend that Semerod's complaint should be dismissed with prejudice because any amendment would be futile. A district court must provide a plaintiff the opportunity to amend her complaint unless doing so would be "inequitable or futile."[80] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[81]

The Court does not agree that amendment would be futile. First, Semerod's Fourth Amendment claims fail because she has not alleged any facts to show that her phone was seized out of compliance with the warrant authorizing seizure. Second, although the Court holds as a matter of law that Shamokin was not deliberately indifferent to an obvious risk of constitutional violations as to support single-incident liability, Semerod could plead facts to show that it was on notice of a pattern of violations that would support a different theory of *Monell* liability. Finally, as noted, the parties have not addressed all of the legal issues that bear on Semerod's claim for prospective injunctive relief against the Individual Defendants. Accordingly, Semerod may amend her complaint to include all provable facts that would support liability under a viable theory. If there are no

---

[80] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002).
[81] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

facts to establish liability on a given issue, Semerod should decline to renew that claim.

## III.    CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted. Plaintiff is granted leave to amend.

As such, Plaintiff will be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge